GREGG D. ZUCKER (Bar No. 166692)
gregg@foundationlaw.com
**FOUNDATION LAW GROUP LLP**
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel: 310-979-7561

*Attorneys for Plaintiff Zemoga, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEMOGA, INC.<br><br>    Plaintiff,<br>vs.<br><br>CATHY LEWIS,<br><br>    Defendant | **CASE NO.**<br>**COMPLAINT FOR**<br>(1) VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT<br>(2) VIOLATION OF THE STORED COMMUNICATIONS ACT<br>(3) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT<br>(4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS<br>(5) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS<br>(6) LIBEL<br>(7) LIBEL PER SE<br>(8) TRADE LIBEL<br>AND<br>**DEMAND FOR JURY TRIAL** |

1

Plaintiff Zemoga, Inc. ("Company" or "Plaintiff") alleges for its complaint against Defendant Cathy Lewis ("Lewis" or "Defendant"), to the best of its knowledge, information and belief, formed after an inquiry reasonable under the circumstances:

## PRELIMINARY STATEMENT

1. Defendant hacked into a Company-issued computer and mobile phone and shared private and sensitive text messages and photos retrieved from those devices with unauthorized third parties in an effort to damage the Company's economic relations with current and prospective customers.

## THE PARTIES

2. Plaintiff Zemoga, Inc. is a Connecticut corporation with its principal place of business in Wilton, Connecticut.

3. Defendant Cathy Lewis is an individual residing in Studio City, California.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this matter pursuant to the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2701 *et seq*, the Stored Communications Act ("SCA"), 18 U.S.C § 2701, *et seq*, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq* ("CFFA").

5. Federal diversity jurisdiction also exists pursuant to 28 U.S.C. 1332. Plaintiff is a Connecticut corporation with its principal place of business in Connecticut. Defendant is an individual who resides in California. Therefore, complete diversity of citizenship exists. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

6. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the claims arising from violations of California statutory and common law since the facts supporting these claims are so related to the facts supporting the

claims under the ECPA, SCA and CFAA that the claims form part of the same case or controversy.

7. This Court has personal jurisdiction over Lewis because she resides in California.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 139l(b) and (c).

## ALLEGATIONS COMMON TO ALL CLAIMS

9. The Company is a digital services firm that produces and create apps, interactive platforms, digital marketing, product design and web development, along with other digital services.

10. The Company and its subsidiaries have over 150 employees worldwide and service enterprise clients, including multiple Fortune 500 companies.

11. The Company's founder, CEO, and Chairman of the Board of Directors is Donald Edgerton ("Edgerton").

12. In or about February 2020, Lewis began contacting and harassing the Company's employees, board members and executives about matters that did not relate to the Company's business.

13. The subject of these communications was related to Lewis and Edgerton's marital relationship and was personal and sensitive in nature.

14. In response to these inappropriate communications, on April 23, 2020, the Company sent a letter to Lewis demanding that she cease any and all communications with Company's employees, board members and executives.

15. In the letter, the Company stated it had no intention to deprive Lewis of any information she was entitled to from Edgerton.

16. In response to the Company's letter, on May 4, 2020, Lewis sent an email to the Company's counsel admitting she contacted at least one Company

employee who she claimed involved herself in Lewis's marriage and suggested the employee should focus on her job and not act as "marriage counselor, wife or mother" to Edgerton. Lewis also claimed she had a right to reach out to "anyone at [the Company]…through Facebook, text or even a phone call" and in no way did that qualify as "intentionally interfering with [the Company's] business."

17. On the same day, Lewis contacted a senior executive at a major chemical manufacturer (the "Executive") via Facebook.

18. The Executive is well-respected in the industry in which the Company operates and is a clearly identified business prospect of the Company, which is and was known to Lewis.

19. Lewis transmitted personal and sensitive text messages and photos of Edgerton to the Executive with the sole intent to disparage the Company and injure its ongoing and prospective business relations.

20. Months prior, Lewis retrieved the text messages and photos by hacking into Edgerton's Company-issued computer and mobile phone (the "Devices") and retrieved the text messages and photos without the Company's or Edgerton's authorization or permission.

21. The Company maintained private and confidential electronic communications, including emails, on the Devices.

22. Edgerton saved Company and personal credentials, *e.g.*, username and passwords on the Devices, as well as other accounts linked to those Devices, including Edgerton's iCloud account, a cloud-based software system that, among other things, allows a user to access mobile text messages and photos on a desktop computer.

23. The Company also maintained, stored, and shared documents, files, and photographs on the Devices.

24. The Company and Edgerton also utilized the Devices to transmit and receive information confidential to Edgerton and the Company, including privileged attorney-client communications.

25. Neither the Company nor Edgerton provided authorization or the means to access password-protected accounts on the Devices to Lewis, including access to iCloud accounts.

26. The text messages sent to the Executive contained sexually suggestive comments sent by another person to Edgerton.

27. Lewis then sent the following statement to the Executive: Hey maybe [] will be on your next trip since she was texting your buddy this while we were married. Whatever bull**** he is saying is just that. Bull****.

28. Lewis subsequently forwarded a hacked photo of Edgerton on a boat with other people, along with following message to the Executive: "Enjoy []. Yah I'm the bad one."

29. When Lewis disseminated the hacked text messages and photo to the Executive, the Company had been actively soliciting his business and business contacts.

30. On May 6, 2020, the Company sent another letter to Lewis advising her the communications she had with the Executive severely compromised the Company's business relations.

31. The Company again demanded Lewis cease any further communications with the Company's actual clients, prospective clients, and/or employees.

32. In an attempt to avoid further escalation, the Company proposed that Lewis, the Company and Edgerton enter into a mutual non-disparagement agreement, which would have prohibited all parties from making disparaging remarks to third parties.

33. A few days later, the Company sent a draft mutual non-disparagement to Lewis for review and signature. Lewis did not sign the agreement or respond to it.

## FIRST CLAIM

**(Violation of the Electronic Communications Privacy Act,**

**18 U.S.C. § 2510 *et. seq.*)**

34. The Company repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

35. Lewis, without authorization or permission, hacked into, stole, and illegally gained possession and control of the Devices.

36. Lewis endeavored to intercept and intentionally intercepted text messages and photos being sent to and from the Devices.

37. The foregoing text messages and photos were intercepted contemporaneously as they were being sent and received from the Devices.

38. As a result, Lewis has violated the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et. seq.*

39. Based on the foregoing, the Company is entitled to damages in an amount to be determined at trial, plus reasonable attorney's fees, costs, and interest.

## SECOND CLAIM

**(Violation of the Stored Communications Act, 18 U.S.C. § 2701 *et. seq.*)**

40. The Company repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

41. Lewis, without authorization or permission, hacked into, stole, and illegally gained possession and control of the Devices.

42. Lewis accessed and illegally downloaded, saved, and printed out text messages and photos retrieved from the Devices.

43. Lewis viewed and disseminated the text messages and photos to unauthorized third parties.

44. The text messages and photos that were stolen by Lewis were electronically stored on the Devices.

45. As a result, Lewis violated the Stored Communications Act, 18 U.S.C. § 2701 *et. seq.*

46. Based on the foregoing, the Company is entitled to damages in an amount to be determined at trial, plus reasonable attorneys' fees, costs, and interest.

## THIRD CLAIM

**(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.)**

47. The Company repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

48. The Company-issued computer and mobile phone are "protected computers," as that term is defined in 18 U.S.C. § 1030(e), in that they are connected to the Internet and are used in or affect interstate commerce and communication.

49. Lewis intentionally accessed the Company's protected computers without authorization or by exceeding authorized access, and obtained files, data and information, including text messages and photos, in violation of 18 U.S.C. § 1030(a)(2)(C).

50. As a result of Lewis's illegal conduct, the Company suffered damages in an amount no less than $5,000 pursuant to 18 U.S.C. § 1030(C)(4)(A)(i)

## FOURTH CLAIM

**(Intentional Interference with Prospective Economic Relations)**

51. The Company repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

7

52. The Company has actual and prospective business relationships.

53. The Company has a prospective business relationship with the Executive who is a senior executive at a major manufacturing company.

54. During the relevant time period, the Company had been actively soliciting the Executive's business.

55. The Company had a reasonable probability of future business opportunities and economic benefit in connection with both: (i) the Executive; and (ii) Executive's relationship with other businesses and individuals with whom the Company does business.

56. Lewis was aware of the Company's actual and prospective business relationships, including with the Executive.

57. Lewis unlawfully and improperly launched a campaign of illegal computer hacking, theft, and harassment designed to interfere with the Company's business relationships, including its relationship with the Executive.

58. Lewis unlawfully and improperly publicly maligned Edgerton, the owner and founder of the Company, to tarnish the Company's brand and reputation, for the unlawful purpose of extorting concessions from Edgerton in connection with a divorce proceeding between Edgerton and Lewis.

59. Lewis committed these tortious acts with deliberate and actual malice, ill-will, and oppression in conscious disregard of the Company's legal rights.

60. Lewis's actions have disrupted the Company's relationships and business opportunities with actual and prospective customers.

61. As a direct and proximate result of Lewis's conduct, the Company has been injured by Lewis and is entitled to actual and punitive damages in an amount to be determined at trial.

## FIFTH CLAIM

### (Negligent Interference with Prospective Economic Relations)

62. The Company repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

63. The Company had a reasonable probability of future business opportunities and economic benefit in connection with both: (i) the Executive; and (ii) the Executive's relationship with other businesses and individuals with whom the Company does business.

64. Lewis had knowledge of such opportunities and knew or should have known that if she did not act with due care, her launching of a campaign of a computer hacking campaign, theft, and harassment would interfere with such opportunities and cause the Company to lose the economic benefit of its business relationship.

65. Lewis acted negligently and has disrupted the Company's relationships and business opportunities with its customers.

66. As a direct and proximate result of Lewis's conduct, the Company has been injured by Lewis in an amount to be determined at trial.

## SIXTH CLAIM

### (Libel)

67. The Company repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

68. Lewis's postings and comments on the Executive's Facebook page contained defamatory and libelous statements against and concerning Edgerton personally and professionally which were known by Lewis to be false and untrue and which she knew would damage the Company's business reputation in the business community.

69. The statements were defamatory and libelous in that they asserted Edgerton, the Company's CEO and founder, was a philanderer and/or adulterer.

70. The statement "[w]hatever bull**** [Edgerton] is saying is just that. Bull****" was meant to convey that Edgerton, as CEO and on behalf of the Company, is a liar and someone who should not be trusted.

71. Lewis's defamatory statement was false.

72. Lewis made the statement knowing it was false or had serious doubts about the truth of the statement.

73. As a result, the Company has suffered damages in an amount to be determined at trial according to proof, including but not limited to, harm to the Company's reputation and brand.

74. In making the defamatory statement identified above, Lewis acted with malice, oppression, or fraud, and is thus responsible for punitive damages in an amount to be determined at trial.

## SEVENTH CLAIM

### (Libel Per Se)

75. The Company repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

76. Lewis's postings and comments on the Facebook page contained defamatory and libelous statements against and concerning Edgerton personally and professionally which were known by Lewis to be false and untrue and which she knew would damage the Company's business reputation in the business community.

77. The statements were defamatory and libelous in that they asserted Edgerton was a philanderer and/or adulterer.

78. The statement "[w]hatever bull**** [Edgerton] is saying is just that. Bull****" was meant to convey that Edgerton is a liar and someone who should not be trusted.

79. Lewis's published statements to the Company's prospective and actual clients regarding Edgerton are libelous on their face under California Civil Coe § 45a, as they have a tendency to injure the Company's business reputation in the digital service industry.

80. At the time Lewis published such defamatory statements, she knew the statements were about Edgerton in his capacity as CEO of the Company, knew the statements were false and/or failed to take reasonable care to determine the truth or falsity of the statements.

81. As a direct and proximate cause of Lewis's publication, the Company has suffered actual damage to its business, trade, profession or occupation. By reason of Lewis's publication, the Company has suffered a decline of business, a loss of good will, and injury to its business reputation in the amount to be determined at trial.

82. In making the defamatory statement identified above, Lewis acted with malice, oppression, or fraud, and is thus responsible for punitive damages in an amount to be determined at trial.

## EIGHTH CLAIM
### (Trade Libel)

83. The Company repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

84. The Company is informed and believes and thereon alleges that Lewis has made false, disparaging, and defamatory statements regarding the Company's business or services and that Lewis knew such statements were false at the time they were made.

85. Lewis's statements relating to the Company were intentionally made in order to injure the Company's business, business reputations, and ability to provide professional services, or should have been recognized by Lewis as being likely to cause harm to the Company.

86. As a result of such trade libel, the Company has suffered actual pecuniary damage in lost prospective business with existing and potential clients that were deterred from doing business with the Company in an amount to be determined at trial.

87. In making the defamatory statement identified above, Lewis acted with malice, oppression, or fraud, and is thus responsible for punitive damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment:

1. On the First Claim for relief against Defendant for over $75,000 in damages, plus interest, attorneys' fees and expenses, and for such other and further relief as the Court may deem just and proper.

2. On the Second Claim for relief against Defendant for over $75,000 in damages, plus interest, attorneys' fees and expenses, and for such other and further relief as the Court may deem just and proper.

3. On the Third Claim for relief against Defendant for over $75,000 in damages, plus interest, attorneys' fees and expenses, and for such other and further relief as the Court may deem just and proper.

4. On the Fourth Claim for relief against Defendant for over $75,000 in damages, plus interest, attorneys' fees and expenses, and for such other and further relief as the Court may deem just and proper.

5. On the Fifth Claim for relief against Defendant for over $75,000 in damages, plus punitive damages, interest, attorneys' fees and expenses, and for such other and further relief as the Court may deem just and proper.

6. On the Sixth Claim for relief against Defendant for over $75,000 in damages, plus punitive damages, interest, attorneys' fees and expenses, and for such other and further relief as the Court may deem just and proper.

7. On the Seventh Claim for relief against Defendant for over $75,000 in damages, plus punitive damages, interest, attorneys' fees and expenses, and for such other and further relief as the Court may deem just and proper.

8. On the Eighth Claim for relief against Defendant for over $75,000 in damages, plus punitive damages, interest, attorneys' fees and expenses, and for such other and further relief as the Court may deem just and proper.

Dated: September 28, 2020      FOUNDATION LAW GROUP LLP

By: /s/ Gregg D. Zucker
*Attorneys for Plaintiff Zemoga, Inc.*

## DEMAND FOR JURY TRIAL

The Company requests a trial by jury of all issues so triable.

Dated: September 28, 2020      FOUNDATION LAW GROUP LLP

By: /s/ Gregg D. Zucker
*Attorneys for Plaintiff Zemoga, Inc.*